## F. P. FOLTZ
v.
## MILTON B. HARDIN.

*Negotiable Instruments—Note—Principal and Surety—Practice— Variance—Pleading—Proceeds of Sale of Mortgaged Property—Amount to be Credited.*

1.   Where demurrer to a declaration is overruled, and the defendant pleads over to the declaration, any exception to the overruling of the demurrer is waived.

2.   A question of variance can not be first raised in the Appellate Court.

3.   Where a special count in the declaration set out an alleged partnership and that the notes sued on were for a partnership debt and the defendants plead the general issue, the partnership and the consideration of the alleged obligation stands admitted.

4.   A bank in which appellant was a partner, was indebted to an estate for a sum necessary to the settlement thereof.   A note signed by the bank and by the individual partners was given for the debt.   The administrator borrowed the necessary money from a third party, and, as part of the collateral, a note, secured by mortgage, due from appellant to another of the partners in the bank, was pledged.   This debt not being paid at maturity, the pledgee foreclosed.   The property was struck off at master's sale, by direction of attorneys, to the pledgee, who, on learning this fact, repudiated the purchase.  Subsequently, the partner originally owning

appellant's indebtedness, agreed with the pledgee and with the administrator that the amount at which the property was struck off should be credited to appellant on his personal note; that the sale should stand, but that only the amount at which the property could be resold, should be credited on the loan to the administrator and the indebtedness of the bank, it is *held:* In an action brought by the administrator upon the note given by the bank and the partners therein, that appellant was not entitled to have the full amount for which the property was sold at master's sale credited on the bank indebtedness, for which he was liable, but only the amount actually realized from the second sale, it appearing that there was no fraud in the transaction.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. S. MURPHY, for appellant.

A trustee, such as an administrator, executor, etc., is prohibited from assuming a position in regard to the trust fund in which his interest shall conflict with his duty. Hough v. Harvey, 71 Ill. 72; Shelton v. Rice, 30 Mich. 296; Little v. Beveridge, 58 N. Y. 596; Thorp v. McCullum, 1 Gilm. 614.

It is not necessary that the intention should be wrongful; the act is unlawful and therefore forbidden. In re Davis, 62 Mo. 450; Grisley v. Williamson, 9 Bush. 91.

We think it not a sufficient answer to say that only the *cestui que trust*, the estate, can take advantage of the action of the administrators in thus dealing with the trust fund individually in his own behalf. If the assignment of the note —a trust fund—to one of the trustees by himself and co-trustee is prohibited, why can not the defendant Foltz, against whom the obligation is sought to be enforced, avail himself of the objection? The above authorities lay down the rule prohibiting such dealing with trust property by the trustee, with himself, individually, as resting in a sound public policy. The demurrer should have been sustained, and such error may be reviewed in this court. McFadden v. Fortier, 20 Ill. 509; Hamlin v. Reynolds, 22 Ill. 207.

The pledge of commercial paper as collateral security for the payment of a debt in the absence of a special agreement

to the contrary, imposes the duty on the pledgee, and he is bound to hold and collect the same and apply the net proceeds to the payment of the debt so secured. The pledgee of such security becomes a trustee for the parties owing the debt so secured. Joliet Iron Co. v. Scioto Fire Brick Co., 82 Ill. 548.

Pledgee can not compromise nor surrender collateral securities. This principle is usually illustrated in the dealing of the holder of such collateral with the debtor; but the principle must be held the same where one of several joint obligors put up the collateral security. It is for the benefit of all the obligors, and each individual obligor is as much a beneficiary in the collateral so placed by one of their number as the one who, liable, puts up the security.

We quote from Colebrooke on Collateral Security, page 127, Sec. 96:

" The pledgee of negotiable securities as collateral security is not permitted, in the absence of special agreement, in his dealings with the securities, to accept anything less in discharge or satisfaction of them than the amount due on them. * * * Any trade or compromise, or rebate made by the pledgee with the maker or other parties to such collateral, whereby the same is surrendered for less than the face value thereof, is a breach of duty of the pledgee, and is not sustained. Any arrangement whereby the securities are transferred for less than is due thereon to a party * * * is a compromise," and alike a breach of duty on the part of the pledgee.

See authorities cited in notes on page 127; Union Trust Co. v. Rigdon, 93 Ill. 471; Cadwell v. Brown, 36 Ill. 103.

Where negotiable instruments have been placed in the hands of a creditor as collateral security for the payment of a valid debt or obligation, the pledgee's relation to the parties to the contract is that of trustee and *cestui que trust*. Colebrooke on Collateral Security, 117, Sec. 87, and authorities cited in the notes.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, for appellee.

After demurrer to declaration was overruled, appellant

filed the general issue. (Abstract, p. 3.) This was a waiver of the demurrer. McFadden v. Fortier, 20 Ill. 515.

No objection was made in the Circuit Court on the ground of variance. But such objection can not for the first time be made on appeal. I. & St. L. R. R. Co. v. Estes, 96 Ill. 470–473; City of Bloomington v. Tebballs, 17 Ill. App. 455–456.

The objections actually made as shown by the record were: 1. There is nonjoinder of parties. 2. The summons is improper in this suit. . The abstract puts it: 1. " The misjoinder of parties." 2. " The summons is improper." In fact there was no variance, although the purported copy of the bill of exceptions miscopied the note offered in evidence by omitting therefrom the words, " after date," which, of course, does not change the legal effect thereof; and the note itself is accurately copied in the declaration.

The declaration alleged the partnership of the defendants, that the note sued on was given for a partnership debt. To this declaration appellant plead the general issue not sworn to.

Harris, the only other defendant served with process, was defaulted for want of plea. Under the pleading the partnership stands admitted, likewise the nature of the obligation. Deacon v. Singer, 41 Ill. 30; R. S., Ch. 110, Sec. 36.

It was competent for plaintiff as indorsee to bring suit upon the assigned note although originally given by the firm to himself and one of the partners. Daniel on Negotiable Instruments, Sec. 354 (p. 262); Randolph on Commercial Paper, Sec. 404; Kipp v. McChesney, 66 Ill. 460–463.

Such note is a promise of all to the order or the appointee of one. And when the appointment is made by indorsement, it is a valid contract with the indorsee. Thayer v. Buffum, 11 Metcalf, 398–99.

Counsel for appellant talks learnedly upon the duties of trustees. The duties of the administrators were simply to collect and pay over, under the direction of the County Court, all moneys due the estate. This was done by plaintiff Hardin as administrator, and he fully discharged his trust to the

County Court long before this suit was brought. It illy becomes appellant to make objection on this ground, while refusing to make good to plaintiff his promise to repay him for trust moneys so deposited with appellant's firm.

The note sued on was in fact and in legal effect the note of appellant's firm for a partnership debt. All lawful pretense for cavil thereabout was fortunately avoided by the placing of the individual signatures of four of the partners below that of the firm by its president. The precise manner and form of the signature is immaterial. Bishop on Contracts (2 Ed.), Sec. 1149, note 8; Patch v. Wheatland, 8 Allen, 102; Hówell v. Moores, 127 Ill. 67, 84.

The liability of each partner upon a partnership debt is that of principal obligor. Upon judgment rendered thereon the creditor may at will in the first instance, levy his execution upon the private property of any partner upon whom service of process was had, regardless of the amount of partnership property. Parsons on Partnership (2 Ed.), 362–363; Ladd v. Griswold, 4 Gilman, 37; Mason v. Tiffany, 45 Ill. 395, foot of page; Silverman v. Chase, 90 Ill. 37, 41, foot of page; Doggett v. Dill, 108 Ill. 560, 568–569.

Hence the legal obligation of the debtor partners was in no manner changed by reason of individual signatures of partners present.

The joint indorsers of negotiable paper, who are liable as co-promisors, have no right of subrogation against each other. U. S Dig. (Ed. 1874), First Series, Vol. 2, p. 697, Sec. 376; citing, West Branch Bank v. Armstrong, 40 Pa. St. 278; Holliman v. Rogers, 6 Tex. 91.

The true rule is that if the surety receives security from the principal debtor he is, as to it, a trustee for his co-sureties. Bayles on Sureties and Guarantees, p. 311, Sec. 2.

But this rule does not apply to the case of collateral given to one surety by the creditor. In such case even a co-surety who has paid the. debt does not become entitled to the benefit of the security. Ibid 313, second par. n. 5.

UPTON, J. In March, 1886, and prior thereto, appellant,

Davidson Harris, Strawther Givens, Sam'l McFarland, H. & W. O. Cadwallader were copartners, conducting business at Abingdon, Illinois, in the firm name of the "Union Bank of Abingdon." The appellee and Strawther Givens, a member of the above named copartnership, were administrators of the estate of one Jacob Young, deceased. The administrators had made deposits in the bank, of estate funds, amounting to $4,200, prior to March 17, 1886. At this date such funds were required to settle the estate. The bank had no money with which to pay such deposits. To meet the emergency it was agreed between the copartnership bank and the administrators that a note should be given such administrators for the amount so on deposit, which was executed and delivered by such copartnership bank to such administrators. The note so executed bore date March 17, 1886, was for the amount of such deposit, payable to such administrators, in nine months after date, with interest at seven per cent from date, signed by the bank, and the several members of such copartnership individually. This note soon after its date, and presumptively before maturity, was duly transferred by indorsement to Milton B. Hardin the appellee. Appellee obtained the money necessary to settle the estate of which he was administrator from John E. Cox. To obtain which money and as security therefor, appellee executed to Cox a mortgage on his own farm, the Cadwalladers turned over to Cox some collaterals, and Givens transferred to Cox a promissory note he held against appellant (F. P. Foltz), due Givens individually, dated December 11, 1884, for $2,500, secured by mortgage on real estate in Abingdon, all of which securities were held by Cox as collateral, and to the " *bona fides*" and validity of which no question is made.

Appellant's note not being paid, Cox foreclosed the mortgage security in the Circuit Court of Knox County, obtained a decree of foreclosure, upon which a sale of the estate therein described was duly advertised, and when offered for sale by the master, there being no bidders therefor, the attorneys for appellee, without any instructions from, and in the absence of, the appellee, directed the premises to be struck off to the

appellee for the full amount of the decree, $2,419.54, which was done by the master making the sale. Upon notifying appellee of the result of the sale, he at once and within ten days, and before filing the certificate of such sale, notified the master in chancery that he declined and refused to sanction or ratify such sale or the bid therefor made and also in like manner and at the same time the appellee Hardin and Givens were notified of Cox' refusal to ratify or in any manner approve the sale, or the bid so made, and that unless they, or one of them, would pay the amount so bid to apply on their indebtedness to him, the property would be again advertised and resold. Upon this notice being given the parties, Cox, Givens and Hardin met, and Givens being the individual owner of the Foltz mortgage indebtedness, being willing to allow the debt due him from appellant Foltz to be canceled and satisfied to the full amount of the bid, $2,419.54, it was agreed that Cox should hold the mortgaged property so sold him by such master, simply for collateral security, as it was held by him before the sale, and in case the premises so sold were not redeemed by Foltz, the mortgagor, or his creditors according to law, and the title thereto vest in Cox, he should then resell the same to the best advantage, and give Hardin credit on his indebtedness to Cox for the actual amount Cox might so receive, or upon full payment of the indebtedness due Cox he should release his claim to the property; in other words, Cox thought he might obtain the legal title to the mortgaged estate by the sale, yet, as between him and his assignor, Givens, it was to be treated as collateral to Hardin's indebtedness to Cox to the same extent and in like manner as if no foreclosure or sale of such collateral had been made. To this agreement Foltz was not a party, nor was he consulted in regard thereto, his rights, equities and interest being regarded as in no manner abridged, impaired or affected thereby.

The mortgaged premises so sold were not redeemed, and after the time for redemption allowed by law had expired, pursuant to the agreement, Cox received the master's deed therefor. Failing to obtain any offer for the property (which still remained in possession of Foltz) exceeding $1,200, in October, 1889, Cox

arranged with Hardin (his debtor) that he should pay the full amount due Cox on the original loan, except the sum of $1,256, upon the payment of which Cox should release Hardin in full, on the original indebtedness, and extend further time to Givens in which to pay the $1,256, Cox in the meantime holding the master's deed and the title of the land, as collateral security for the payment of that sum by Givens, which being done, and the entire payments which had been made to Hardin to apply on the original note of $4,200 against the bank copartnership having been indorsed thereon, Hardin brought suit on the last named note, to which all the copartners were made parties defendants, appellant and Davidson Harris being alone served with process. The declaration filed contained a special count upon the note and the common counts, to which appellant interposed (a demurrer, general and special, which being overruled), pleaded the general issue, and issue was taken thereon. A default was taken as against Hardin, and a jury was impaneled to try the issue on behalf of Foltz, appellant, and returned a verdict for appellee and against Davidson Harris and appellant in the sum of $2,165.82, upon which, after overruling a motion for a new trial, the trial court gave judgment, and appeal was taken to this court.

The first point made by appellant is that the court below erred in overruling the demurrer interposed to the declaration. By pleading over to the declaration the demurrer was waived. Nye v. Wright, 2 Scam. 222.

The point made as to variances can not be made in the first instance in this court, and the abstract fails to show that it was interposed in the court below. City of Bloomington v. Tebballs, 17 Ill. App. 455; City of Elgin v. Kimball, 90 Ill. 356; I. & St. L. Ry. Co. v. Estes, 96 Ill. 473.

The special count in the declaration stated and set out an alleged partnership, and that the notes sued upon were for a partnership indebtedness. Under the pleadings therefor, the partnerships and the consideration of the alleged obligation stands admitted. Sec. 36, Chap. 110, R. S.

The main question arising upon this record is in reference to the disposition of the note secured by mortgage for $2,500,

given by F. P. Foltz, appellant, to Strawther Givens, and by him turned over to Cox as collateral as has been before stated. It is insisted by Foltz, appellant, that inasmuch as the mortgaged estate was sold at foreclosure sale for the sum, $2,419.57, and Cox obtained a conveyance thereunder, therefore that amount should have been indorsed upon the $4,200 note given by the bank to the administrators of Young's estate. It will be noticed that Givens held the note and mortgage against appellant in his own right; between himself and appellee there existed the relation simply of debtor and creditor. Appellee and his assignor, Cox, alone had the right to the money due on appellant's mortgage. Appellee and his assignor, Cox, upon the foreclosure and sale of appellant's mortgaged estate allowed appellant the full amount for which that mortgaged property was sold and far more than this record shows it was reasonably worth; if not so, why was it not redeemed? There is no pretense of fraud or wrong in the making of that sale, or that other or different interests existed in or to that mortgaged property or the indebtedness thereby secured than as above stated. How, then, can any controversy in reference to the matter arising out of arrangement proposed or existing between appellee and Cox, become a factor in the contention here in question? The contention in the case at bar arises upon a note for the payment of which to appellee, both appellant and Strawther Givens were, as copartners, equally bound. Appellee, to meet his share or portion thereof turned out securities to him belonging in or to which neither the copartnership nor the individual members thereof, save himself and his debtor, had the least possible interest. What right had these copartners as such, to those securities or any part thereof? No relation of trust or principal and surety existed between them. What matter to those copartners how much or little, should be derived from, or when or how these securities should be enforced? That was a matter entirely in which appellee or his assignor, Cox, and the debtor in such securities named were alone interested. True, the more money obtained therefrom, the larger the amount might be applied upon the principal, for which such copartnership were

liable, but it could not in the least degree affect the liability of the individuals composing it. If any of the makers of the original note of $4,200 had inadvertently or otherwise paid more than his individual share, those deficient must contribute to its repayment. It could make no conceivable difference to appellant as such copartner whether Givens sold the mortgage securities, or the real estate thereby secured, which he held against the appellant for $1,200 on $2,500, so long as the appellant obtained the full value of such real estate so mortgaged applied in satisfaction of his indebtedness to appellee, which we have seen he did, and for more than a full value, as shown by the record, and appellant can not now be heard to complain upon the merits of this controversy.

But it is said in this case there is a pledge, and hence a relation of trust exists, and our attention is invited to that branch of the law. If that contention be conceded, it could exist only between Givens and Cox, and they are not complaining; as between appellant and appellee, the relation of debtor and creditor simply exists.

It is also claimed that error was committed by the trial court in giving and refusing instructions asked for the appellant. But we are not favored with the reasons of the learned counsel for that contention.

It is also said, that the court erred in refusing a new trial. We have carefully examined the instructions complained of and we are unable to find any reversible error therein. Upon the whole, we think substantial justice has been done in the trial and judgment of the Circuit Court and that judgment is affirmed.                                   *Judgment affirmed.*